Defendant (hereafter abreviated as CGMHI) was the issuer of the two now liquidated & defunct stocks as shown in file 'Exhibit A', symbol UWT advertised by defendant as **Velocity Shares 3x Long Crude Oil ETNs linked to the S&P GSCI Crude Oil Index ER New** and symbol DWT advertised as **Velocity Shares 3x *Inverse* Crude Oil ETNs linked to the S&P GSCI Crude Oil Index ER New**. As the two stocks are advertised as the inverse of each other, by definition the % one increased each day would be almost exactly the % the other decreased the same day, which is exactly what happened every day for months. However, Exhibit A shows that from the closing price of 0.6410 on March 17, 2020, uwt dropped to 0.3160 as the closing price two days later on March 19, 2020 – a decrease of 50.7%. Exhibit A shows next that in that same two-day period, dwt dropped in price from a closing price of 22.10 on March 17 to 10.15 at closing on March 19 – a drop of 54.1%. **Both stocks dropped over 50% in the same two-day period – clearly blatant acute false advertising by CGMHI – clearly not following each other as inverse stocks following the stated index or any index.** In those two days, CGMHI stole over half of all investor's money.

The third pic in Exhibit A shows a screenshot of all the transactions made by the plaintiff for only the stock uwt, omitting transactions in other stocks not related to this case for simplification. 'Exhibit B..' is plaintiff's official March 2020 brokerage statement for confirming all the transactions in the simplified Exhibit A third pic. The third pic in Exhibit A shows at the top the two sales each of 25,000 shares of uwt that plaintiff was forced to sell all uwt shares after seeing the blatant fraud in both uwt and dwt falling over 50% in the past two days as described above in Part III.  25,000 shares were sold at a price of 0.2945 and 25,000 sold at a price of 0.29 – for an average selling price of 0.29225. Since both dwt & uwt dropped in price about the same amount a little over 50% from closing March 17 to closing March 19, if the fraudulent tracking hadn't occurred, it would stand to reason that both should have retained nearly the same price in that time frame. So, at the March 17 closing price of 0.6410 as the price uwt should have been on March 19, this would be a fair price for the 50,000 shares plaintiff was forced to sell on March 19.  So, the 50,000 shares sold at an average selling price of 0.29225 = $14,612 without the fraudulent tracking should have sold at a price of 0.6410 for a total of $32,050.  So, the shortfall caused by the fraudelent tracking was $32,050 - $14,612 = $17,438.  Defendant CGMHI announced on March 19, 2020 the liquidation of uwt and dwt in a couple weeks as mandated in its rules when such a huge drop occurs.  This meant that holders of uwt such as plaintiff had very little time to wait for uwt to rebound at a time when oil was at an extreme low and thus uwt was at an even more extreme low being 3X the difference.  And because of the over 50% fraudulent drop, plaintiff couldn't even wait that short couple weeks and risk more fraudulent drops so had to sell on March 19.  Since the liquidation was caused by the drop from fraudulent mistracking, the liquidation itself was also illegitimate, so plaintiff seeks total losses from uwt as shown in the final pic of Exhibit A as $43,300 as compensatory damages.

Plaintiff also seeks $173,200 in punitive damages (four times the compensatory damages as allowed by law) and presents as justification the following:

   a) On April 27,2020 CGMHI received certified letter #7018 1130 0001 9626 1617 sent by plaintiff detailing the huge faulty price tracking of uwt and dwt on March 18 & 19, 2020 and plaintiff's desire to settle the matter amicably by CGMHI responding within 5 business days to avoid suing in court.  CGMHI never responded.
   b) In any crime, punitive damages are vital.  When a burglar robs a house and is caught, what if he was allowed to merely return the items stolen without any punitive damages?
   c) This fraud was acute and severe – over 50% loss basically stolen from ALL stockholders of BOTH uwt & dwt by CGMHI without notice in direct fraud to what the stocks were advertised to track.  Because it was done at a time when oil was historically low, total losses were much more, closer to 80% if not even higher.
   d) Timing – CGMHI chose to perpetuate this fraud at a time when the price of oil was acutely low and volatile, knowing that many would be attracted to buy the stock especially to hedge against other positions. Also, at a time when State Courts across the US are closed to all but mission critical cases because of the coronavirus, and many cases don't meet the threshold of the

$75,000 minimum to file in US District Court.

    e) On March 19 (the second of the two days), CGMHI announced the mandatory liquidation of both dwt and uwt on April 3, 2020 as mandated in their prospectus because of the extreme drop (caused by CGMHI fraudulently dropping the stock price). This caused other stockholders to receive even much less because they were forced to sell when oil (and uwt 3X more so) were at extreme lows and if they held til liquidation, also to pay liquidation fees.

    f) There are many stockholders who suffered losses from this fraud too small for it to be worth their time, cost and effort to sue. Or suffered larger losses but don't have the courage to sue. CGMHI will keep these ill-gotten profits from the fraud. Only punitive damages can work to offset these and establish a disincentive for future fraudulent activity.

    g) The main office of CGMHI listed here as 388 Greenwich ST, NY, NY continues to remain closed to the public and has for the past many months "due to covid-19" as stated by CGMHI, which is nearly a $1 trillion company who refuses to even have a single employee sitting behind a glass partition to accept legal documents like court summons. A blatant barrier to victims recovering losses.

    Reason (a) stating defendant's total lack of response demonstrates that the index mis tracking and defendant's refusal to acknowledge or correct it were both intentional and (b) through (g) show by the timing and actions that defendant acted to maximize their profit by fraud and maximize losses for victims and maximize barriers to recover their losses.

    Plaintiff seeks in total:
$ 43,300 – compensatory damages
$173,200 – punitive damages
$    400 – court filing fee

$216,900 - Total, plus any additional relief deemed appropriate by this Honorable Court