# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

Case 1:20-cv-07619-ALC

David M Kirk, plaintiff

    V

Citigroup Global Markets Holdings Inc, defendant

Dec 30, 2020

**VIA ECF & E-MAIL**

## Plaintiff's Amended Complaint

In compliance with Doc 20 Order, plaintiff submits this filing and affirms jurisdiction immediately following below. Because this filing is 27 days prior to the due date, plaintiff has no objection to the scheduled dates in Doc 20 being moved accordingly sooner.

## Jurisdiction

1)     This Honorable Court has subject matter jurisdiction over this action pursuant to Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a) and Section 27(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa(a) - "Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business". Defendant is an inhabitant of Manhattan encompassed within the Southern District of NY and has made use of the facilities of a national securities exchange (NYSE also in Manhattan) in connection with the transactions, acts, practices, and courses of business alleged in this complaint. Defendant issued and traded daily stock symbols uwt and dwt repeatedly referenced in this complaint. Other securities fraud cases filed by private individual plaintiffs against the **same defendant** in this **same Honorable Court (SDNY)** include: *Merryman et al. v. Citigroup, Inc., et al. (SDNY)*. 1:15-cv-09185-CM-KNF, *In Re: Citigroup Inc. Securities Litigation (SDNY),* 1:07-cv-09901-SHS. Defendant has admitted to "have fallen short of regulators' expectations"[1], those regulators citing

"unsafe and unsound banking practices"[1] over "longstanding failure"[1] easily encompassing the **same time period** as the offenses stated in this complaint – from settling a criminal inquiry with federal prosecutors who claimed that in 2017 that defendant was allowing drug smugglers to use the bank to launder money from Mexico[1] to defendant's agreement on March 19, 2020 (this complaint lists March 18 & 19, 2020 as dates of offense) to paying fine to the OCC for violating the fair housing act[2], to a $900 million clerical error on Aug 16,2020.[3]

2)     This complaint meets the $75,000 threshold for filing in this Honorable Court, citing *ONEPOINT SOLUTIONS LLC v. BORCHERT,* United States Court of Appeals FOR THE EIGHTH CIRCUIT No. 06-2481 starting with the last line on page 9, "We hold that a reasonable jury could award OnePoint damages totaling more than $75,000 should it believe that $66,000 was stolen by the appellees. OnePoint has thus met its burden of establishing that its claim under § 604.14 meets the jurisdictional threshold." Thus, punitive damages can be used to meet the $75,000 threshold when compensatory damages alone are under $75,000. This amended complaint clearly states defendant's actions exceeded the threshold of merely an ordinary fraud case and meets the requirements for punitive damages under New York State law to be awarded punitive damages for fraud, that "a party must demonstrate that the fraud involved egregious conduct, directed not only at the plaintiff but also at the public at large." Plaintiff highlights below in ***italic bold*** throughout complaint the most 'egregious', 'gross' and 'morally reprehensible' reasons justifying punitive damages. By the daily (and real time) % changes in the stocks issued by defendant (uwt and its advertised inverse stock dwt) faithfully mirroring each other and faithfully tracking the index they were advertised to track for months, investor stockholders (aka "public at large") such as plaintiff built reliable trust in both stocks performing as advertised. However as detailed in paragraphs 4-8 below, in a two day period both stocks under tracked the index they were advertised to track by over 50%, and in paragraph 7 that uwt had a massive 50 percentage point shortfall in tracking the index as advertised causing nearly an 80% loss to many uwt stockholders (including plaintiff for the majority of his shares sold on March 19, 2020 – for 31,000 of the shares sold)[4] because the fraudulent tracking was timed when the price of oil was at a historic low. Paragraph 9 details that the ***timing of the fraud coincided exactly TO THE DAY of the NY Governor's order starting the reduction of***

*personnel of non-essential businesses of 50% on March 18 increasing to 100% on March 20, preventing all victims from filing in their home states for all states except NY.  In two days a 50%-80% loss for victims plus being forced to file in the venue of the plaintiff. As detailed at the end of footnote 4, victims having bought and held uwt only 13 days (or more for many cases) prior to March 19 would have suffered losses of 94%.*

## Complaint

3)     Statement of Claim: Plaintiff claims he suffered damages listed below as a result of defendant's blatant fraud in its stock uwt grossly not tracking the index it was advertised to track (i.e. false advertising). Plaintiff has submitted Doc 13-1 which establishes plaintiff as the Grantor and Trustee and until death the person solely authorized to make all actions by and for said Trust in which the account (Doc 1-2) which suffered the losses is in entitled under.

4)     Defendant (abbrev. CGMHI) was the issuer of the two now liquidated & defunct stocks as shown in Doc 1-1 symbol UWT advertised by defendant as **Velocity Shares 3x Long Crude Oil ETNs linked to the S&P GSCI Crude Oil Index ER** New and symbol DWT advertised as **Velocity Shares 3x Inverse Crude Oil ETNs linked to the S&P GSCI Crude Oil Index ER New**. As the two stocks are advertised as the inverse of each other, by definition the % one increased each day would be almost exactly the % the other decreased the same day, which is exactly what happened every day for months. However, Doc 1-1 shows that from the closing price of 0.6410 on March 17, 2020, uwt dropped to 0.3160 as the closing price two days later on March 19, 2020 – a decrease of 50.7%. Doc 1-1 shows next that in that same two-day period, dwt dropped in price from a closing price of 22.10 on March 17 to 10.15 at closing on March 19 – a drop of 54.1%. **Both stocks dropped over 50% in the same two-day period – clearly blatant acute false advertising by defendant – clearly not following each other as inverse stocks following the stated index or any index.** *In those two days, defendant stole over half of all investor's money in BOTH stocks.*

5)     The third pic in Doc 1-1 shows a screenshot of all the transactions made by the plaintiff for only the stock uwt, omitting transactions in other stocks not related to this case for simplification. Doc 1-2 is plaintiff's official March 2020 brokerage statement for confirming all the transactions in the simplified Doc 1-1 third pic. The third pic in Doc 1-1 shows at the top the two sales each of 25,000 shares of uwt that plaintiff was forced to sell all uwt shares after seeing the blatant fraud in both uwt and dwt falling over 50% in the past two days as

described above in Part III. 25,000 shares were sold at a price of 0.2945 and 25,000 sold at a price of 0.29 – for an average selling price of 0.29225. Since both dwt & uwt dropped in price about the same amount a little over 50% from closing March 17 to closing March 19, if the fraudulent tracking hadn't occurred, it would stand to reason that both should have retained nearly the same price in that time frame. So, at the March 17 closing price of 0.6410 as the price uwt should have been on March 19, this would be a fair price for the 50,000 shares plaintiff was forced to sell on March 19. So, the 50,000 shares sold at an average selling price of 0.29225 = $14,612 without the fraudulent tracking should have sold at a price of 0.6410 for a total of $32,050. So, the shortfall caused by the fraudulent tracking was $32,050 - $14,612 = $17,438. Defendant announced on March 19, 2020 the liquidation of uwt and dwt in a couple weeks as mandated in its rules when such a huge drop occurs. This meant that holders of uwt such as plaintiff had very little time to wait for uwt to rebound at a time when oil was at an extreme low and thus uwt was at an even more extreme low being 3X the difference. And because of the over 50% fraudulent drop, plaintiff couldn't even wait that short couple weeks and risk more fraudulent drops so had to sell on March 19. Since the liquidation was caused by the drop from fraudulent mis tracking, the liquidation itself was also illegitimate, so plaintiff seeks total losses from uwt as shown in the final pic of Doc 1-1 as $43,300 as the first part of compensatory damages for the account stock losses.

6)   The time period of two days was chosen by plaintiff because it most clearly shows the gross fraudulent index mis tracking since in that period both uwt and the advertised inverse dwt dropped over 50%.  To break down the results for each of the two days, referring to the first pic in Doc 1-1, on March 18, 2020, uwt dropped from .6410 (closing price on March 17) to a closing price on March 18 of .2570 - a 59.9% drop.  In the same time period, from the second pic, dwt increased from 22.10 to 28.01 - only a 26.7% increase - far short of the 59.9% it should have increase to mirror the drop in uwt since dwt was advertised as the inverse stock. On March 19, uwt rose from .2570 (closing price on March 18) to a closing price on March 19 of .3160 - a 23% increase.  In the same time period, dwt dropped from 28.01 to 10.15 - a massive 68.3% drop, far exceeding the 23% increase in uwt.  On both days, the stock which dropped did so far more than its inverse stock rose, causing a net result of an over 50% drop in both stocks over the two-day period. Thus, on the second day the first day's discrepancy was not corrected but further exacerbated greatly.

7)     Though the fact that the stocks advertised as inverse of each other grossly did not mirror each other for March 18 & 19, 2020, plaintiff further provides evidence showing the direct miscorrelation between uwt he bought and the index it was advertised to track. Page 8 of the prospectus states "The Closing Indicative Value of each series of ETNs on each Index Business Day is based on the closing level of the Index on that Index Business Day."  Doc 13-2 shows that on March 19, the index rose 24.39%.  As mentioned in paragraph 4 above, per first pic in Doc 1-1, uwt is advertised in its symbol description as "**Velocity Shares 3x Long Crude Oil ETNs linked to the S&P GSCI Crude Oil Index ER New**".  So "**3x**" would mean that uwt should have rose 24.39% times 3 equaling 73.17%.  But as mentioned in the prior paragraph, on March 19 uwt only increased 23% - a massive shortfall never corrected for.

8) (prospectus) Plaintiff asserts that the description of the stock symbols listed as inverse stocks tracking the stated index listed in bold in plaintiff's complaint for all investors to see supersedes the quote in the previous sentence for many strong obvious reasons.  Nearly all prudent investors would have seen the stock descriptions before deciding to purchase uwt or dwt, but few would have been expected to read all of the small print in such an 85-page prospectus.  And nothing in such fine print justifies a 50% under tracking in only a two-day period.  The prospectus states that the ETNs aren't meant to be "buy and hold" investments, but doesn't assign a time frame for "hold", and a two-day period (March 18 & 19, 2020 when gross loss by fraud occurred) is hardly much of a "hold" time.  Regarding the prospectus mentioning the right to accelerate the ETNs (liquidate), "Automatic Acceleration", this is not the issue.  The 50% drop from fraudulent index tracking initiated the loss, not the accelerated liquidation.  The liquidation only heightened the loss from 50% to about 80% because the fraudulent drop was chosen at a time when oil was at a historic low and investors who weren't smart enough to sell by March 19 after the 50% fraud were later forced to liquidate. The acceleration was automatically triggered by the fraudulent mis tracking of the index so the acceleration (liquidation) was also fraudulent.  ***50%-80% loss from fraud is surely egregious. And that includes all stockholders "public at large".*** Regarding the prospectus stating "the trading price of any series of the ETNs at any time may vary significantly from the Indicative Value of such ETNs at such time because the market value reflects investor supply and demand for the ETNs." First, "vary significantly" would by no investor's definition be as large as a 50% variation (in both uwt and dwt), especially when the stocks mirrored each other nearly perfectly in real time for many months prior to March 18, 2020, most of

that time within one percentage point every day.  And if one the two stocks varied significantly, why didn't the other mirror the significant difference?  The fact is both were 50% lower than they should have been.  The computer program meant to buy and sell in real time to force the stock price up or down grossly did not on March 18 & 19, 2020.  The prospectus states (page 4 of Doc 12-1, listed as page 3 of 85 of prospectus) by the first bullet that Citigroup issued nearly $8 billion in uwt stock.  So lack of funds for buying enough stock to keep the price 50% higher like it should have been to track the advertised index was not an issue, especially with $8 billion available to do so, especially when the bottom of the same page lists an initial offering price of $25/share for both uwt and dwt and price at the time plaintiff made last two sales was 0.29 and .2945 so most of the $8 billion was already profited by defendant in decay over an extended time period of many months and of the measly amount outstanding defendant profited heavily by mis tracking fraud causing 50%-80% losses!  Second, the quote mentions "supply and demand" but like "vary significantly" this was never an issue in the many months previous to March 17 when the defendant's computer algorithm followed the stocks to both faithfully track the index and mirror each other, both within less than one percentage point error on most all days – and then in two days both stocks dropped over 50%!

9) (timing) As stated in paragraph 4 above, "As the two stocks are advertised as the inverse of each other, by definition the % one increased each day would be almost exactly the % the other decreased the same day, which is exactly what happened every day for months." Because the stocks had previously faithfully followed the index correctly in real time for months, obviously defendant used a simple computer program in those months to ensure that if the price of either stock started deviated from the price it should have been to follow the index, the computer would automatically buy or sell enough stock to bring the price to where it should be so that the index was followed correctly.  ***Computer programs don't change on their own – a human that had access to the defendant's software must have chosen to change it. Intentional human interference, thus "intentional egregious harm to the plaintiff and public at large (all stockholders)". And this change was made on March 18 & 19, 2020*** as previously stated that the stock uwt grossly mis tracked the index it was advertised to track and uwt and dwt grossly weren't inverse of each other. On March 7, 2020, NY Gov Cuomo signed Executive Order No. 202 taking action against the Covid-19 emergency and continued throughout March to expand on the order and on ***March 18*** issued Order No. 202.6 to "reduce the in person workforce at any work

locations by 50% no later than March 20 at 8:00 p.m.", followed by Order No 202.7 on **March 19** reducing to 75% and Order No. 202.8 on March 20 to 100%. **Clearly the mis tracking was timed to coincide exactly with the closing of defendant's main office in NY to prevent being served summons anywhere except by NY courts via NY Secretary of State who only serves process from summons issued by NY courts.** This clear timing of the fraud caused defendant's original court case filed on May 19, 2020 in his local US District Court for the Middle District of Florida, case number 3:20-cv-504-J-34PDB to never be able to have the certified summons served on the defendant because with their main office closed, service was only possible via the NY Secretary of State which only serves process on summons issued from courts in the state of NY. This caused plaintiff many months of delay and in addition having to pay another $400 court fee so plaintiff includes the $400 FL court fee with compensatory damages below because the mis tracking started on the very day as the first Governor's order and because a human employee of defendant chose to change the software tracking method on that exact day means it definitely qualifies to be included in compensatory damages for punitive damages to be added to. This brings total compensatory damages sought to $43,300 (last line of paragraph 5) plus $400 = $43,700.

10)   Plaintiff also seeks $174,800 in punitive damages (four times the compensatory damages as allowed by law) and presents as justification the following:

 a) On April 27,2020 CGMHI received certified letter #7018 1130 0001 9626 1617 sent by plaintiff detailing the huge faulty price tracking of uwt and dwt on March 18 & 19, 2020 and plaintiff's desire to settle the matter amicably by CGMHI responding within 5 business days to avoid suing in court. **CGMHI never responded thus demonstrating a total lack of concern by neither admitting, denying, or investigating the claim – even though it was rife with scandals as stated in paragraph 1.**

 b) In any crime, punitive damages are vital. When a burglar robs a house and is caught, what if he was allowed to merely return the items stolen without any punitive damages?

 c) **This fraud was acute and severe – over 50% loss** basically stolen from ALL stockholders of BOTH uwt & dwt by CGMHI without notice in direct fraud to what the stocks were advertised to track. Because it was done at a time when oil was historically low, **uwt losses were much more, nearly 80% for many of plaintiff's shares sold on March 19.2020 and potentially 94% for other stockholders[4].**

d) Timing re oil price – CGMHI chose to perpetuate this fraud at a time when the price of oil was acutely low and volatile, knowing that many would be attracted to buy the stock especially to hedge against other positions. Also, at a time when State Courts across the US are closed to all but mission critical cases because of the coronavirus, and many cases don't meet the threshold of the $75,000 minimum to file in US District Court.

e) ***Timing re NY Gov Executive Order No. 202 causing closure of main office preventing defendant being served any out of state summons. Ref: bold type in paragraph 6 above.***

f) On March 19 (the second of the two days), CGMHI announced the mandatory liquidation of both dwt and uwt on April 3, 2020 as mandated in their prospectus because of the extreme drop (caused by CGMHI fraudulently dropping the stock price). This caused other stockholders to receive even much less because they were forced to sell when oil (and uwt 3X more so) were at extreme lows and if they held until liquidation, and also to pay liquidation fees.

g) There are many stockholders who suffered losses from this fraud too small for it to be worth their time, cost and effort to sue. Or suffered larger losses but don't have the courage to sue. CGMHI will keep these ill-gotten profits from the fraud. Only punitive damages can work to offset these and establish a disincentive for future fraudulent activity.

h) The main office of CGMHI listed here as 388 Greenwich ST, NY, NY continued to remain closed to the public (and to plaintiff's knowledge still remains closed) and has for the past many months "due to covid-19" as stated by CGMHI, which is nearly a $100 billion company who refuses to even have a single employee sitting behind a glass partition to accept legal documents like court summons. ***A blatant barrier to victims recovering losses.***

11)    Plaintiff seeks in total:

$  43,700 - Compensatory Damages (43,300 - stock loss by fraud + $400 FL court fee)

$174,800 – Punitive damages

<u>$       400 – NY court filing fee</u>

$218,900 - Total, plus reasonable interest at a customary rate from March 19, 2020 (the 2nd of the two-day fraud), and any additional relief deemed

appropriate by this Honorable Court

[1] Oct 7,2020 New York Times online article by Emily Flitter

[2] March 19, 2019 online article by Ben Lane

[3] Nov 16, 2020 The Wall Street Journal online article by Becky Yerak and Alexander Gladstone

[4] "nearly an 80% loss" is derived by Doc 1-1, page 3 screenshot of only uwt transactions including the last uwt buy on 3/6/20 and all the buys following on 3/10/20 showing buys totaling 31,000 shares at an average price of $1.38728/share which were ultimately sold on 3/19/20 at an average price of $0.29225 – a loss of 78.9%. The buys on 3/11/20 were excluded because most were sold on 3/13/20 and for the minority not sold the price bought at wasn't much different than the ones included. The shares first bought on 3/6/20 at $4.87 if not sold quickly but rather at the 3/19/20 average selling price of $0.29225 would have suffered an ultimate loss of 94% in under two weeks so stockholders having bought on 3/6/20 (and earlier in many cases) and held the short time until 3/19/20 would have suffered such 94% astronomical loss or more.

Respectfully submitted this 3rd day of December, 2020

/s/ David M Kirk

David M Kirk, plaintiff

cc: Samuel J. Rubin (via ECF and e-mail)