UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID M. KIRK,<br><br>                 Plaintiff,<br><br>v.<br><br>CITIGROUP GLOBAL MARKETS HOLDINGS INC.,<br><br>                 Defendant. | No. 20-cv-7619 (ALC) |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION FOR SANCTIONS**

**GOODWIN PROCTER LLP**

Marshall H. Fishman
Samuel J. Rubin
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone:  (212) 813-8800
Facsimile:  (212) 355-3333

*Attorneys for Defendant Citigroup Global Markets Holdings Inc.*

Defendant Citigroup Global Markets Holdings Inc. ("CGMHI") respectfully submits this memorandum of law, together with the Declaration of Samuel J. Rubin ("Rubin Decl."), in support of CGMHI's motion for sanctions pursuant to the Court's inherent powers, and as described in the Court's May 4, 2021 (ECF No. 51) Order (the "May 4 Order").

## INTRODUCTION

Since the early days of this lawsuit, Plaintiff has harassed defense counsel. In March 2021, that harassment escalated to anti-Semitic attacks on defense counsel and his family and then culminated in a disturbing inquiry by Plaintiff asking the 700 members of his social media group, to whom he reports on activity in this lawsuit, whether "anyone has friends or family near" or "plans to be near" defense counsel's home town. This latest episode occurred after the Court already had directed Plaintiff to cease his harassment. CGMHI thus feels compelled to seek sanctions in order to put a stop to Plaintiff's harassment of its counsel.

## BACKGROUND

### Plaintiff's Inappropriate Litigation Conduct

From the outset of this litigation, Plaintiff's strategy has been to leverage his administration of a social media group to exert settlement pressure on CGMHI. *See, e.g.*, Rubin Decl., ¶¶ 5-6, Exs. 1, 10. As alleged by Plaintiff in the complaint, the group is comprised of approximately 700 individuals who invested in exchange-traded-notes and allegedly sustained losses while trading those notes through various online trading platforms. *See* Compl. (ECF No. 22) ¶ 10; *see also* Rubin Decl., ¶ 2, Ex. 1.

Plaintiff's complaint and communications to counsel have cited that group to present higher alleged aggregated damages figures to CGMHI in seeking settlement. *See* Compl., ¶ 10; *see also* Rubin Decl., ¶¶ 2, 5, Exs. 1, 10. Plaintiff also has purported to represent other *pro se*

plaintiffs in their respective lawsuits by rejecting offers to waive service of process (Rubin Decl., ¶ 5, Ex. 6), providing advice and form templates for court filings (*id.*, ¶¶ 5, 8, Exs. 3, 19), and filing, in his own name, an *amicus* brief in a separate action (ECF No. 41).

### Plaintiff's Harassment of Defendant and Defense Counsel

Plaintiff began to harass defense counsel through what he described as an "internet proliferation" campaign. Rubin Decl., ¶ 6, Exs. 8-9. On January 12, 2021, Plaintiff posted to the social media group that defense counsel was a "useless expensive blood sucking attorney[]." *Id.*, Ex. 8. On January 14, 2021, he declared that defense counsel would "be the next to feel the blunt [sic] of [his] internet proliferation" campaign. *Id.*, Ex. 9.[1]

On February 20, 2021, Plaintiff embarked on that "internet proliferation" campaign by using an alias ("AmVeryIrate") to negatively "review" defense counsel on Goodwin's Facebook page and then, one minute later, posted that review to Plaintiff's social media group. Rubin Decl., ¶ 7, Exs. 11-12. On March 6, 2021, Plaintiff posted another purported "review" through the same alias on defense counsel's wife's business's social media account. *Id.*, Ex. 13.

Advancing the same arguments (and in much of the same language) that Plaintiff has used in submissions to this Court and in other correspondence, Plaintiff described defense counsels' law practice as "exactly the kind [of] total financial parasitic activity that made it so easy for Hitler to convince the European population to ostracize, torture and murder millions of Jews." *Id.* (emphasis added). He identified counsel by name and described them as "[t]otal parasites." *Id*.

---

[1] Plaintiff's hostility increased at the same time that, as he has explained, numerous private counsel declined to pursue his lawsuit. *See, e.g.*, ECF No. 35. Indeed, a plaintiff in one of the related actions pending before this Court (*Yambo-Torres*) annexed an email from a plaintiff's lawyer stating that: "In regards to Citi, we have stated previously that it complied with the terms of its UWT prospectus. Their sale of the ETN was legal. Unless they marketed it to retail investors, we see no avenue of recovery and are not intending at this time to take any actions against them." *Yambo-Torres v. CGMHI*, No. 21-cv-2386 (ALC), ECF No. 1-6 (emphasis added).

After posting the review under his alias, on March 18, 2021, Plaintiff stated to his social media group that the "internet proliferation"—which he had previously threatened—had "already started against Citi, the attorney's firm <u>and even his wife</u>." Rubin Decl., ¶ 7, Ex. 14 (emphasis added).

In that same post, Plaintiff identified his next target as "Citi management starting from the top" and confirmed his personal responsibility for the posts by stating, "I'm hoping they sue <u>me</u>" and "<u>I'm</u> insured for $2 million worth of legal fees . . . ." *Id.* (emphases added). On April 6, 2021, Plaintiff posted (through his AmVeryIrate alias) on what he believed to be Citigroup's Chief Executive Officer's Facebook page and then re-posted that review, in his own name, to his social media site (*id.*, Ex. 15). When the page was taken down, Plaintiff commented: "don't mess with <u>us</u>!" *Id.*, Ex. 16 (emphasis added).

### The April 16, 2021 Hearing

In connection with Defendant's requests for consolidation of related actions and Plaintiff's requests for the appointment of *pro bono* counsel, on April 16, 2021, the Court held a pre-motion conference. ECF Nos. 42, 45. At that time, the Court advised Plaintiff that it had "seen the UWT Shareholders Facebook group that was linked to one of your [Plaintiff's] prior submissions" (ECF No. 45 at 3:14-15) and stated to Plaintiff that, although he was a *pro se* litigant, he was "not excused from any obligation not to harass the defendant or defendant's counsel by any means." *Id.* at 8:4-5. The Court stated that its directive included, but was not limited to, "email and/or Facebook" communications and, further, that Plaintiff also may "only represent [his] own interests because [he is] not an attorney" and "may not act on behalf of any of the other *pro se* plaintiffs in cases already filed or yet to be filed." *Id.* at 8:7-10.

3

**Plaintiff's Disregard of the Court's April 16, 2021 Warnings**

After the conference on April 16, 2021 (ECF No. 45), Plaintiff continued to post his "lawsuit template" to his social media group. Rubin Decl., ¶ 8, Ex. 19. On April 16 and 24, 2021, he continued to provide other *pro se* litigants legal advice about punitive damages and service of process (*id.*, Exs. 17-18), and, on April 25, 2021, stated that he planned to complete a "consolidated complaint for us 6" (referring to the six related cases before this Court) and that he would "post the template for it for the rest" (referring to the six other cases not designated as related to this action). *Id.*, Ex. 19.[2]

On May 3, 2021, Plaintiff posted to his social media group, inquiring as to whether anyone (in its approximately 700 person membership) "has friends or family near [defense counsel's home town] or plans to be there" and asking them to "please message [Plaintiff]." *See* Rubin Decl., ¶ 8, Ex. 20. The same day, counsel brought that post—which, taken in context with the prior posts, was unnerving and threatening—to the attention of this Court and local law enforcement (ECF No. 54; Rubin Decl., ¶ 9), and Plaintiff responded that he was only seeking information on defense counsel's home town as a potential "vacation" destination. *See* ECF No. 61-1.

The Court issued the May 4 Order, finding Plaintiff's posts to be "highly concerning and extremely problematic" especially given the Court's directives to Plaintiff at the April 16 conference. *See* ECF No. 51 at 1. The Court held that Plaintiff's First Amendment rights did "not

---

[2] Contrary to Plaintiff's suggestion, defense counsel did not join his social media group but collected his social media postings exclusively from public social media pages. Rubin Decl., ¶¶ 3-4. This collection was done in accordance with the New York State Bar Association's Ethics Opinion authorizing the use of publicly-available social network pages. *See* N.Y.S.B.A. Ethics Op. No. 843; *see also* Haig, Robert L., 6 Bus. & Com. Litig. Fed. Cts. § 67:7 (4th ed.) ("For example, the 'public' content of the Facebook account of a party or witness can be reviewed by anyone, including an attorney or an investigator working for the attorney. Pictures can be downloaded and screen shots can be collected.").

excuse 'threats or actions of leaving stinging online reviews'" and reiterated its directive that Plaintiff was prohibited from harassing Defendant or its counsel.  *Id.*  The Court further "warned that any additional harassment may result in the Court imposing sanctions *sua sponte*, including dismissing Plaintiff's case" and authorized this motion for sanctions.  *Id.* at 2.

## ARGUMENT

### THE COURT SHOULD SANCTION PLAINTIFF

The Second Circuit and Supreme Court have "made clear that a district court has inherent authority to sanction any party appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)).  Such inherent authority exists to vest courts with the "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers*, 501 U.S. at 43.  Such powers are governed "not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.*

*Pro se* litigants are not excused from the Court's sanction power because "all litigants, including *pro ses*, have an obligation to comply with court orders." *Durant v. Trad. Inv., Ltd.*, No. 88-cv-9048 (PKL), 1992 WL 51557, at *13 (S.D.N.Y. Mar. 12, 1992) (citing *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir, 1990)) (emphasis added).  In other words, "one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Id.* (citations omitted).

The available sanctions "within the court's discretion range from an assessment of attorney's fees for less severe abuse of judicial process, to the most severe sanction of 'outright dismissal' of an action." *Ceglia v. Zuckerberg*, No. 10-cv-00569A(F), 2013 WL 1208558, at *7

(W.D.N.Y. Mar. 26, 2013) (citing *Chambers*, 501 U.S. at 45) (emphasis added)).  Monetary sanctions are considered the least severe sanctions available to courts. *Argo Marine Sys. Inc. v. Camar Corp.*, 102 F.R.D. 280, 284 (S.D.N.Y. 1984) (observing in discovery sanctions context that monetary sanctions are the "least severe" sanctions available).

Plaintiff has engaged in sanctionable conduct by harassing defense counsel and his family with his remarks on social media postings and through his threatening communications regarding the whereabouts of defense counsel's home town (*see* Rubin Decl., ¶¶ 6-8).  Plaintiff has further engaged in sanctionable conduct by disregarding this Court's directives at the April 16, 2021 conference, engaging in unauthorized practice of law, and by making misrepresentations to the Court that Plaintiff was not responsible for the "AmVeryIrate" alias postings and that he posted about defense counsel's home as a potential vacation destination (*id.*, ¶¶ 8-9).[3]

Although Plaintiff's post seeking to identify members of his social media following at or near defense counsel's home town did not contain an explicit threat of physical harm, the post should be taken in context with Plaintiff's prior posts through an alias, referencing Hitler's killing of Jews, Plaintiff's willingness to seek out members of defense counsel's family for his "internet proliferation" attacks, and Plaintiff's acknowledgement in Court filings of his agreement with the AmVeryIrate postings regarding what he considers "financially parasitic" behavior (ECF No. 55 at 3).  Albeit in more egregious contexts—overt and explicit threats of death or physical violence on members of the judiciary—the Second Circuit has observed that the standard, in this Circuit, is that a communication is a "threat" if an "ordinary, reasonable recipient who is familiar with the

---

[3]  *See, e.g.*, *Spiegel v. Ahearn*, No. 101251/2016, 2018 WL 4743366, at *4-5 (N.Y. Supp. Oct. 2, 2018) (a non-lawyer's drafting of documents for the purposes of advancing others' suits, advising about the merits of claims and damages, and steps to prosecute their suits constituted the unauthorized practice of law).

6

context of the communication would interpret it as a threat of injury" and that such threatening communications can be made in "conditional and inexplicit" manners through "cryptic and menacing" correspondence. *See, e.g.*, *United States v. Turner*, 720 F.3d 411, 420, 424-430 (2d Cir. 2013). Counsel for CGMHI respectfully submits that was the case here.

CGMHI has unnecessarily incurred attorneys' fees responding to Plaintiff's improper litigation tactics and harassment of defense counsel and his family, and in responding to *seriatim* submissions to this Court, none of which CGMHI should have needed to incur in the course of defending this action. *See* Rubin Decl., ¶¶ 10-11; *Vari-O-Matic Mach. Corp. v. N.Y. Sewing Mach. Attachment Corp.*, 638 F. Supp. 713, 714 (S.D.N.Y. 1986) (awarding attorneys' fees to a litigant for "legal fees he should never have been forced to incur").

Focusing solely on the time period from Plaintiff's March 6, 2021 posting through the date of the May 4 Order, and also focusing solely on activities related to Plaintiff's sanctionable conduct, CGMHI has incurred attorneys' fees in excess of $20,000,[4] exclusive of the preparation of this motion, any reply memoranda, appearances before the Court, or opposition to Plaintiff's threatened motion for countersanctions, all of which would significantly increase the amount of fees incurred. Rubin Decl., ¶¶ 10-11. CGMHI respectfully requests that the Court award a monetary sanction of $5,000 (25% of the approximately $20,000 in fees incurred relating to

---

[4] Counsel included time incurred from March 6, 2021 to May 4, 2021 concerning: (i) counsel's review of Plaintiff's public social media postings and correspondence; (ii) coordination with CGMHI and Goodwin Procter's internal general counsel's office regarding Plaintiff's harassment; (iii) research and analysis of sanctions issues in preparation of CGMHI's May 3, 2021 pre-motion submission; and (v) conferring with local law enforcement regarding Plaintiff's May 3, 2021 posting. *See* Rubin Decl., ¶ 10. In light of Plaintiff's disregard for the Court's prior directives, CGMHI is respectfully requesting that the Court award only 25% ($5,000) of Citi's approximately $20,000 in reasonably incurred attorneys' fees relating to Plaintiff's sanctionable conduct without a further submission of CGMHI's time records. To the extent a review of CGMHI's time records is required, CGMHI respectfully requests leave to make such a fee application under seal and on an *in camera* basis for the Court's review.

Plaintiff's sanctionable conduct) at this time, with CGMHI reserving rights to seek additional awards should any future infractions occur.

## CONCLUSION

CGMHI respectfully requests that the Court sanction Plaintiff by issuing: (i) an order and judgment awarding CGMHI $5,000 in attorneys' fees; and (ii) an order directing the dismissal of the complaint, with prejudice, if Plaintiff engages in any further act of misconduct and awarding CGMHI all of its reasonable attorneys' fees in the event of such misconduct and dismissal.

Dated: May 25, 2021
New York, New York

Respectfully submitted,

**GOODWIN PROCTER LLP**

/s/ Samuel J. Rubin
Marshall H. Fishman
Samuel J. Rubin
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Phone:  (212) 813-8800
Fax:  (212) 813-3333
mfishman@goodwinlaw.com
srubin@goodwinlaw.com

*Attorneys for Defendant Citigroup Global Markets Holdings Inc.*