UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID M. KIRK, | No. 20-cv-7619 (ALC) |
| Plaintiff, | Related Actions: |
| v. | 21-cv-2384 (ALC) |
| | 21-cv-2386 (ALC) |
| CITIGROUP GLOBAL MARKETS HOLDINGS INC., | 21-cv-2387 (ALC) |
| | 21-cv-2413 (ALC) |
| Defendant. | 21-cv-3294 (ALC) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S FINAL AMENDED COMPLAINT**

Citigroup Global Markets Holdings Inc. ("CGMHI") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff's Final Amended Complaint ("Amended Complaint" or "Compl."), pursuant to the Court's May 19, 2021 (ECF No. 65) Order and Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[1]

**PRELIMINARY STATEMENT**

The Amended Complaint—which is predicated upon an alleged fraud whereby Plaintiff purportedly sustained approximately $43,000 in losses by trading in a certain financial product— should be dismissed for lack of subject matter jurisdiction. Plaintiff's alleged losses are far below the $75,000 threshold for diversity jurisdiction, and the $393,300 in punitive damages he seeks are not available in ordinary common law fraud claims such as these.

---

[1]  The Amended Complaint is Plaintiff's "Final Amended Complaint" which was filed on December 29, 2020, ECF No. 22). By Order dated May 19, 2021, the Court denied Plaintiff's request to further amend the Amended Complaint (ECF No. 65). The Amended Complaint states that it "is meant to be taken in addition to the rest" of the original September 17, 2020 complaint (ECF No. 1) including the exhibits thereto. *See* Compl. pg. 1 (preamble). Paragraph references herein shall refer to the Amended Complaint filed at ECF No. 22 unless otherwise stated to refer to incorporated portions of ECF No. 1.

Nor does the Amended Complaint plead federal question jurisdiction. Although the Amended Complaint makes conclusory references to the Securities Act of 1933 (the "Securities Act") and the Securities and Exchange Act of 1934 (the "Exchange Act"), no claim for relief is alleged under either statute which also requires dismissal for lack of subject matter jurisdiction.

## STATEMENT OF FACTS

Based on the face of the Amended Complaint and Plaintiff's brokerage statements annexed thereto, Plaintiff alleges he purchased, through an online E-Trade brokerage account, exchange traded notes issued by CGMHI in the secondary market.[2] Compl. ¶ 5 (ECF No. 1, Ex. B). The notes were the "3x Long Crude Oil ETNs," which traded on the New York Stock Exchange under the ticker, "UWT" (the "UWT Notes"). *Id.* ¶ 4.

Plaintiff alleges that, as of March 17, 2020, he was holding 37,500 UWT Notes that were trading at a "fair price" in the secondary market. *Id.* ¶ 5. On March 19, 2020, he purchased an additional 12,500 UWT Notes, increasing his position to 50,000 UWT Notes. *Id.*, Ex. B at 22. Later the same day, Plaintiff liquidated his entire position in the secondary market for $14,607.45, which he claims reflects a loss of $17,438 when compared to an alleged "fair price" had he not held his position beyond March 17, 2020. *Id.* ¶¶ 3, 5-7.

The Amended Complaint also seeks damages for Plaintiff's alleged lost opportunity to time the market, by asserting that he "had very little time to wait for UWT to rebound at a time when

---

[2]     The facts alleged in the Amended Complaint are taken as true solely for the purposes of this motion to dismiss. The Amended Complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *See, e.g., Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (quoting *Sira v.* Morton, 380 F.3d 57, 67 (2d Cir. 2004)).

oil was at an extreme low." *Id.* ¶ 5.  Plaintiff seeks $43,300 for his total UWT Note position

(irrespective of trading losses allegedly realized) plus $393,300 in punitive damages.  *Id.* ¶¶ 5, 10.[3]

## ARGUMENT

### THE COURT LACKS SUBJECT MATTER JURISDICTION

### A.     The Amended Complaint Fails to Establish Diversity Jurisdiction

United States "district courts shall have original jurisdiction of all civil actions where the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  The "party invoking the benefit

of federal jurisdiction bears the burden of establishing the existence of that jurisdiction."  *Z-Axis*

*Tech Sols., Inc. v. Richmond Cap. Grp.*, No. 17-cv-3983 (GBD), 2018 WL 1088008, at \*1

(S.D.N.Y. Feb. 14, 2018).  That party "has the burden of proving that it appears to a 'reasonable

probability' that the claim is in excess of the statutory jurisdictional amount."  *Tongkook Am., Inc.*

*v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).[4]

---

[3]     The $17,438 calculation is mathematically incorrect because it includes the 12,500 UWT Notes which Plaintiff purchased on March 19, 2020 and sold the same day for a profit.  Compl. Ex. B (ECF No. 1-2) at 22.  Excluding those 12,500 UWT Notes reduces the alleged trading losses to approximately $13,000.  *Id.*

[4]     In assessing that probability, courts will "refrain from drawing any inferences in favor of the party asserting jurisdiction."  *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (S.D.N.Y. 2000).  Although courts recognize a rebuttable presumption that amounts alleged are a "good faith representation of the actual amount in controversy," that presumption erodes where it is legally certain such amounts are unavailable under applicable state law.  *Z-Axis*, 2018 WL 1088008, at \*3; *Carling v. Peters*, No. 10 Civ. 4573 (PAE)(HBP), 2013 WL 865842, at \*6 (S.D.N.Y. Mar. 8, 2013) (adopting recommendation of dismissal of fraud claims seeking punitive damages due to lack of subject matter jurisdiction and observing that, as the "Second Circuit has cautioned, a district court, in determining whether claimed punitive damages count towards the jurisdictional threshold, must examine claims for punitive damages with closer scrutiny than claims for actual damages." (citing *Nwanza v. Time, Inc.*, 125 F. App'x 346, 349 (2d Cir. 2005) and *Zahn*, 469 F.2d at n.1)).  Courts are "not compelled to accept a claim for punitive damages made for the purposes of conferring jurisdiction."  *Tongkook,* 14 F.3d at 784 (citing *Career Init. Corp. v. Palmer*, 893 F. Supp. 295, 296 (S.D.N.Y. 1995)).

Indeed, when punitive damages are used to satisfy the diversity jurisdiction requirement, courts will review them "with greater scrutiny than claims for actual damages . . . ." *Z-Axis*, 2018 WL 1088008, at *3 (citing *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972)).  Under governing New York law, "punitive damages are not available in an ordinary fraud case." *Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 207 (S.D.N.Y. 2001) (striking punitive damages claim because "under New York law, punitive damages are not available in an ordinary fraud case").[5]  For example, in *Kruglov v. Copart of Connecticut, Inc.*, 771 F. App'x 117, 120 (2d Cir. 2019) (Summary Order), the Second Circuit affirmed dismissal for lack of subject matter jurisdiction where the plaintiff sought to include punitive damages in the monetary threshold based on allegations of fraud because "[p]unitive damages are 'refused in the 'ordinary' fraud and deceit case'" under New York law.  *Id.* (citing *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (1961)).

Punitive damages are available only in extraordinary fraud cases where "the fraud is aimed at the public generally, is gross, and involves high moral culpability." *Z-Axis*, 2018 WL 1088008, at *3 (citations omitted).  The "misconduct must be egregious" and "characterized as 'gross' and 'morally reprehensible,'" or involve "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Id*.  The Amended Complaint fails to set forth any factual basis for a fraud claim, let alone an extraordinary claim of fraud that would support including punitive damages within the jurisdictional threshold.

---

[5]     Federal courts sitting in diversity apply the choice-of-law principles of the forum state and, under "New York law, a court must apply the substantive tort law of the state that has the most significant relationship with the occurrence and with the parties." *See, e.g.*, *TeeVee Toons v. Gerhard Schubert GmbH*, No. 00 Civ. 5189 (RCC), 2006 WL 2463537, at *14 (S.D.N.Y. Aug. 23, 2006) (internal quotation and citation omitted).  Plaintiff alleges the purportedly fraudulent conduct occurred in New York on the New York Stock Exchange on March 18 and March 19, 2020. *See* Compl. (ECF No. 1) § III.

The Amended Complaint fails to identify any fraudulent misrepresentation or omission regarding the UWT Notes, much less with the particularity required by Federal Rule of Civil Procedure 9(b).  Indeed, Plaintiff's alleged fraud—that he suffered losses in March 2020 at the onset of the COVID-19 pandemic, while trading in a three-times leveraged note linked to crude-oil markets—is foreclosed by the risk disclosures in the Pricing Supplement.  *See, e.g., In re TVIX Secs. Litig.*, 25 F. Supp. 3d 444 (S.D.N.Y. 2014), *aff'd sub nom.*, 588 F. App'x 37 (2d Cir. 2015) (dismissing fraud claim where pricing supplement "explicitly warned" that ETNs carried significant risk of loss); *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 9 (2d Cir. 1996) (affirming dismissal of fraud claims contradicted by disclosures in the governing prospectus).  The extensive disclosures in the prospectus pricing supplement referenced in the Amended Complaint (the "Pricing Supplement") foreclose exactly the type of fraud claim Plaintiff asserts here and negate any notion of morally reprehensible conduct or dishonesty.[6]  The Pricing Supplement described the UWT Notes as "highly speculative," "highly risky," "suitable only for sophisticated investors who understand and can bear the risks associated with 3 times magnified losses resulting from adverse movements in the daily performance of the Index," and stated that investors *"**should proceed with extreme caution in considering an investment in the ETNs**."*  ECF. No. 25-1 at 16, 29-30 (emphases in original).  It further explained that the UWT Notes' trading prices in the secondary market were "market-determined" prices (*id.* at 18) "**influenced by many**

---

[6]      The Pricing Supplement is referred to and incorporated into the Amended Complaint.  Compl. ¶¶ 7-8.  A copy of the Pricing Supplement referred to in the Amended Complaint is annexed to the January 20, 2021 Declaration of Samuel J. Rubin (ECF. No. 25), at Exhibit A.  Page citations to the Pricing Supplement refer to the page numbers appearing on the lower right hand corner of the document and referring to pages "__/86" of the Pricing Supplement.

**unpredictable factors**" including "events that affect commodities markets generally" and the "global supply and demand for crude oil." *Id.* at 9, 38 (emphasis in original).[7]

The alleged $17,438 (or at most $43,300) in trading losses (Compl. ¶¶ 5, 9, 11), are far below the statutory threshold necessary to establish diversity jurisdiction. There is no basis to include the additional alleged $393,300 in punitive damages (*see id*. ¶ 10) to satisfy the Court's jurisdictional threshold. *Nwanza*, 125 F. App'x at 349.

**B.      The Amended Complaint Fails to Establish Federal Question Jurisdiction**

The Amended Complaint states that the Court has subject matter jurisdiction pursuant to Section 22(a) Securities Act and Section 27(a) of the Exchange Act (Compl. ¶ 1) but asserts no claim for relief under either statute. That alone is a basis to dismiss for lack of subject matter jurisdiction under both statutes. *See, e.g.*, *Valle v. Bally Total Fitness*, No. 01-cv-11614 (RCC)(KNF), 2003 WL 22244552, at *3 (S.D.N.Y. Sept. 30, 2003) (dismissing complaint and holding that the "principal purpose of the pleading is to give the adverse party fair notice of the claim asserted so that a defendant will not have to speculate about its basis") (citing Fed. R. Civ. P. 8(a)(2)); *Lombardi v. Peace*, 259 F. Supp. 222, 224 (S.D.N.Y. 1966) ("It is clear that federal jurisdiction under 28 U.S.C. § 1331 cannot be sustained on the bare allegation that the claim arises

---

[7]     And even assuming that Plaintiff's fraud claim were viably-pleaded (which it is not), courts in this Circuit will still strike punitive damages from even viably-pleaded fraud claims that fail to allege greater moral culpability than in ordinary cases of alleged fraud. *See, e.g.*, *Shanahan v. Vallat*, No. 03-cv-3496 (MBM), 2004 WL 2937805, at *12 (S.D.N.Y. Dec. 19, 2004) (denying motion to dismiss but striking punitive damages because defendants had "not been convicted of any crime relating to this transaction" and did "not appear to have acted with greater moral culpability than is involved in an 'ordinary' fraud case."); s*ee also John Wiley & Sons, Inc. v. Glass*, No. 10 Civ. 598 (PKC), 2010 WL 1848226, at *3 (S.D.N.Y. May 7, 2010) ("Under New York law, punitive damages are not awarded as a matter of course, even on claims of fraud. Generally, punitive damages have been limited to conduct evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations." (internal citations omitted)); *Fritz v. Warner Lambert Pharma Co.*, 349 F. Supp. 1250, 1252 (E.D.N.Y. 1972) ("As pointed out by Judge (now Chief Judge) Friendly in *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 843 (2d Cir. 1967), permeating the New York rule is the requirement that the conduct which 'will give rise to punitive damages must be close to criminality. . . .'").

'under the Constitution, laws, or treaties of the United States.'  The claim on which the Constitutional issue is raised must be well-pleaded.").  Moreover, a "plaintiff cannot create federal jurisdiction under § 1331 simply by alleging a federal claim where in reality none exists" and "[s]ubject matter jurisdiction will lie only where the court determines that the <u>substance</u> of the plaintiff's allegations raises a federal question." *Masino v. Persico Contracting & Trucking, Inc.,* No. 11-cv-4596 (ERK) (ST), 2018 WL 1135473, at *5 (E.D.N.Y. 2018) (emphasis added and quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 140 (2d Cir. 2005)).

The substance of the Amended Complaint also fails to advance a claim under the federal securities laws.  The Amended Complaint alleges it "meets the requirements … under <u>New York State law</u> to be awarded punitive damages for fraud" and that Plaintiff filed this lawsuit in New York specifically because "Courts in the State of New York don't limit punitive damages . . . ." *See* Compl. ¶¶ 2, 10 (emphasis added).  There can be no dispute that punitive damages are unavailable under the federal securities laws.  *See, e.g.*, *Globus v. Law Research Serv., Inc*., 418 F.2d 1276, 1283 (2d Cir. 1969) (holding that punitive damages are not available under either the Exchange Act or the Securities Act); *Klein v. Spear, Leeds & Kellogg*, 309 F. Supp. 341, 344 (S.D.N.Y. 1970) ("We dismiss plaintiff's claim for punitive damages in this first cause of action since under no applicable federal statute would he be entitled to such relief.").  In any event, the Amended Complaint fails to identify an alleged misrepresentation or omission in the Pricing Supplement and fails to plead the other requisite elements of a federal securities fraud claim (*i.e.*, scienter, reliance, loss causation) under any pleading standard, let alone with the particularity required under Federal Rule 9(b).  There is no basis for federal question jurisdiction here insofar as the Amended Complaint purports to plead it.

**CONCLUSION**

For the foregoing reasons, CGMHI respectfully requests that the Court dismiss the

Amended Complaint, in its entirety, and without leave to amend pursuant to the Court's May 19,

2021 Order (ECF No. 65).[8]

Dated:   June 9, 2021               Respectfully submitted,
         New York, New York

                                    **GOODWIN PROCTER LLP**

                                    /s/  Samuel J. Rubin

                                    Marshall H. Fishman
                                    Samuel J. Rubin
                                    The New York Times Building
                                    620 Eighth Avenue
                                    New York, New York 10018
                                    Phone:  (212) 813-8800
                                    Fax:  (212) 813-3333
                                    mfishman@goodwinlaw.com
                                    srubin@goodwinlaw.com

                                    *Attorneys for Defendant Citigroup Global Markets*
                                    *Holdings Inc.*

---

[8]      In addition to the jurisdictional deficiencies identified herein, the Amended Complaint also fails to
state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  CGMHI
reserves the right to advance a motion to dismiss pursuant to Rule 12(b)(6) in accordance with the Court's
May 19, 2021 (ECF No. 65) two-track briefing schedule in the event the Court retains jurisdiction.