# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Case 1:20-cv-07619-ALC

David M Kirk, plaintiff

     V

Citigroup Global Markets Holdings Inc, defendant

June 18, 2021

**VIA ECF & E-MAIL**

## Plaintiff's Opposition to Docs 78 & 79 Motion to Dismiss

1)  I'm grateful for Order Doc 80 which clarifies many issues. I'm sorry that my Doc 22 has to be considered an amendment to Doc 21 instead of a replacement of it, as the reason I filed Doc 21 so early was in the hopes of Defense Counsel issuing a reply early, but as it became clearly later as I stated in Doc 77, only Mr. Rubin benefits from this case becoming lengthier to the detriment of his client and myself.  When Doc 21 wasn't responded to timely, I naturally updated Doc 21 with ongoing gained legal knowledge and filed Doc 22. My Doc 47 states in the second sentence that though my "complaint is nearly identical to the other 5, it doesn't include the specific citation of 28 U.S.C. § 1331 nor especially to Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k which the other 5 complaints cite."  Because Order Doc 80 denies my motion to amend as "futile at this stage…considering only subject matter jurisdiction", citing *Hartley v. Rubio & Jackson v. Wells Fargo Home Mortg.*, then by logic it naturally follows that neither my citing 28 U.S.C. § 1331 or Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k is necessary for them to be relevant to subject matter jurisdiction.  Perhaps the fact that my Doc 22 repeatedly cites false advertising in the uwt stock description and/or that the other 5 cases identical in substance cite said statutes (and thus would be incorporated by reference) is sufficient since Order Doc 80 specifically states that amending my Doc 22 isn't necessary because it wouldn't affect arguments regarding subject matter jurisdiction, so citing such statutes isn't necessary for which I'm thankful.  Now that I have a copy of the *United States v. Spear* referenced in Order Doc 80, I can't fathom how the threats cited including swear words and "…going to set your family on fire and rape your dog" and "ill hunt you down and skin you alive u have 1 week before I kill you and your entire family" even come close to any of the Doc 72 Exhibits.  I reiterate that internet reviews when factual and not threatening I find to be a terrific tool at discouraging potential wrongdoing as well as warning others and I would consider it a sin of omission if I did not use them to do so given the chance to.

2)  Regarding Doc 79 on which Doc 78 is based, it's clearly merely a reiteration of Defense Counsel's flawed and failed attempts at arguing legal technicalities since fraud has never been denied by Defense.  The $75,000 threshold for diversity jurisdiction I've already addressed in paragraph 2 of Doc 22 citing *ONEPOINT SOLUTIONS LLC v. BORCHERT* and in the same paragraph

stated in "***italic bold*** throughout complaint the most 'egregious', 'gross' and 'morally reprehensible' reasons justifying punitive damages", much more than the "ordinary common law fraud" that Defense Counsel Mr. Rubin states in Doc 79 preliminary statement.  In Doc 64 I also stated "Also see *Sieger v. Zak, 74 A.D.3d 1319 (2d Dep't 2010)."* Doc 79 goes on to state that "no claim for relief is alleged under either statute [Securities Act of 1933 (the "Securities Act") and the Securities and Exchange Act of 1934 (the "Exchange Act")]".  Perhaps Mr. Rubin should again read Doc 22 in which I clearly use grade school level math to calculate the gross under tracking by uwt stock of the specified oil index as it states to track it in bold in the stock description.  Namely as stated in my Doc 26 Opposition in paragraph 3 that (i) in Doc 22 paragraph 4 that uwt and inverse stock dwt both dropped over 50% in the two-day period from market open March 18, 2020 to close March 19, 2020 and (ii) In Doc 22 paragraph 6 how on each of those two days "the stock which dropped did so far more than its inverse stock rose" and (iii) in Doc 22 paragraph 7 that on March 19, 2020, uwt under tracked the index by a massive 50 percentage point shortfall.  As my Doc 26 paragraph 3 states, 28 U.S.C. § 1331 which states "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k "provides investors with the ability to hold issuers, officers, underwriters, and others liable for damages caused by untrue statements of fact or material omissions of fact within registration statements at the time they become effective." Using any of the three simple methods of math above, the uwt stock description became a clear untrue statement of fact starting on March 18, 2020.

3)     Doc 79 then again tries to reiterate his understatement of compensatory loss using the $17,438 figure which I stated in paragraph 2 of Doc 77 was his 4th misrepresentation (of 11 total) in which I referenced my Doc 27 which showed that because the fraud was timed when oil was at a historic low, loss was increased greatly which explained the discrepancy between the $17,438 and $43,300 figures.  I wisely decided not to hold the uwt stock after the fraud hoping that the price of oil would rebound as the ones that did suffered 4 additional days of gross fraud as I've repeatedly mentioned starting in my Doc 48 filing in reference to the 4 days cited in the Steadman complaint.  Regarding the Doc 79 citation at the top of page 4 of *Z-Axis* 'when punitive damages are used to satisfy the diversity jurisdiction requirement, courts will review them "with greater scrutiny than claims for actual damages"', I say the math I've presented is as simple, clear, and equating to gross fraud as any case can get.  An 80% loss is very acute, and as I stated in Doc 22 at the end of paragraph 2, those holding uwt for only 13 days or more prior to March 19, 2020 would have suffered a 94% loss and in my Doc 64 calculating the loss of those that held through the additional 4 days of fraud at 98%, the loss from fraud becomes monumental and would certainly pass the "greater scrutiny" standard, especially when factoring in the calculation in Doc 64 the chance of the fraud occurring by accident at **less than one in 522 trillion!**  Though I personally didn't suffer loss from the four additional days, many of the related cases did and the fraud was committed by the same Defendant in the exact same method following in the days right after the fraud from which I suffered loss, and my loss did amount to 80% which in itself is acute enough to pass "greater scrutiny".

4)     Doc 79 page 4, second paragraph again regurgitates *Z-Axis*, stating "Punitive damages are available only in extraordinary fraud cases where the fraud is aimed at the public generally, is

gross, and involves high moral culpability".  I already addressed the latter as stated above in my Doc 22 paragraph 2 highlighting in *italic bold* throughout Doc 22 the gross, egregious, high moral culpability. And regarding the "aimed at the public generally", I also addressed that in Doc 22 and in my Doc 64 stated "In fact, in fraud cases involving a tort, courts have ruled that the conduct only be egregious and not have to meet the requirement of being directed at the public at large.  See *Wrap-N-Pack, Inc. v. Kaye, 528 F.Supp.2d 119 (E.D.N.Y. 2007).*  In fact, the New York Court Case made clear over 40 years ago in *Borkowski v. Borkowski, 39 N.Y.2d 982, 983 (1976)*: "It is not essential, as the Appellate Division stated, that punitive damages may be allowed in a fraud case only where the acts had been aimed at the public generally."  Doc 79 page 4 ends with "The Amended Complaint fails to set forth any factual basis for a fraud claim, let alone an extraordinary claim of fraud that would support including punitive damages within the jurisdictional threshold."  Really?  I refer again to the *italic bold* throughout Doc 22 including in order,

  a) **"timing of the fraud coincided exactly TO THE DAY of the NY Governor's order starting the reduction of personnel of non-essential businesses of 50% on March 18 increasing to 100% on March 20, preventing all victims from filing in their home states for all states except NY. In two days a 50%-80% loss for victims plus being forced to file in the venue of the plaintiff. As detailed at the end of footnote 4, victims having bought and held uwt only 13 days (or more for many cases) prior to March 19 would have suffered losses of 94%"**

  b) **"Both stocks dropped over 50% in the same two-day period – clearly blatant acute false advertising by defendant – clearly not following each other as inverse stocks following the stated index or any index. In those two days, defendant stole over half of all investor's money in BOTH stocks."**

  c) **"Computer programs don't change on their own – a human that had access to the defendant's software must have chosen to change it."**

  d) **"Clearly the mis tracking was timed to coincide exactly with the closing of defendant's main office in NY to prevent being served summons anywhere except by NY courts via NY Secretary of State who only serves process from summons issued by NY courts."** This not only discouraged potential plaintiffs not wanting to file outside their home state but also eliminated filings from potential plaintiffs most all of whom would be at least initially unaware that the NY Secretary of State can be used to serve Defendant.  It took me four months of failed service attempts from my first case filed in my home state of Florida to learn this.

  e) **"about $156 million lost by stockholders to the fraud".** After the 4 additional days of fraud were discovered, this figure increased to $200 million. The additional days also increased the figure at the end of **(a)** from 94% to a 98% loss.

5)   Doc 79 page 5 continues with the same expected and repeated babble again citing Federal Rule 9(b) and risk disclosures which I've already answered all in detail in my Doc 26 Opposition such as paragraph 7 "**Nothing in the prospectus discloses risk from blatant fraud from gross**

**under tracking of the index in the manner that the stock descriptions guaranteed to track it**" as well as my plethora of other arguments in Doc 26 such as in paragraph 5 "supply and demand", "one single day", etc.  Risk is fine, fraud is not.  Doc 79 page 6 then starts with Section B "The Amended Complaint states that the Court has subject matter jurisdiction pursuant to Section 22(a) Securities Act and Section 27(a) of the Exchange Act (Compl. ¶ 1) but asserts no claim for relief under either statute." As I clearly began paragraph 1 of Doc 22, "This Honorable Court has subject matter jurisdiction over this action pursuant to Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a) and Section 27(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa(a) - "Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business"  These statutes obviously govern this Court as having subject matter jurisdiction – the purpose is not to assert a "claim for relief".  That is done on the basis of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k as I stated in paragraph 1 above which Order Doc 80 incorporated by reference in Doc 22 Complaint, specifically Doc 22 reference to "false advertising" in the stock description aka "untrue statements of fact or material omissions of fact within registration statements at the time they become effective" as quoted from 15 U.S.C. § 77k.

6)     Doc 79 then on page 7 states "There can be no dispute that punitive damages are unavailable under the federal securities laws" and then cites the very old 1969 case *Globus v. Law Research Serv., Inc*. stating that the case asserts "that punitive damages are not available under either the Exchange Act or the Securities Act".  This is the first time that Mr. Rubin has stated such which if true and relevant surely with his stellar law academic education he would have argued from Day One.  But he didn't because he is now desperate and is merely continuing his misrepresentations. In fact, the case much more narrowly states that under the Securities Act of 1933 punitive damages cannot be recovered under § 17(a).  Mr. Rubin is well aware as stated in paragraph 1 above that this is an issue of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77**(k),** not 15 U.S.C. § 77q (a) i.e., § 17(a).  Doc 79 next cites *Klein v. Spear, Leeds & Kellogg, 309 F. Supp. 341, 344 (S.D.N.Y. 1970)* ("We dismiss plaintiff's claim for punitive damages in this **first** cause of action since under no applicable federal statute would he be entitled to such relief.").  More ludicrous babble. Immediately prior to that quote, said case states "Plaintiff in opposition seeks leave to amend his present amended complaint so as to state a claim of common law fraud under State law."  This last quote is the direct reference to the first cause of action referred to in the quote prior that plaintiff in that case would be entitled to no relief to.  My case has never attempted to amend "so as to state a common law fraud under State law" and the reference to the case as well as to *Globus v. Law Research Serv., Inc*. are both totally irrelevant to my case and would now be the **12th** misrepresentations in addition to the eleven that I state in my Doc 77 in which I also suggest any further misrepresentations by Mr. Rubin could be responded to by his referral to the NY bar for public reprimand. The Klein case also documents repeated lawsuits filed by plaintiff that defense argues as frivolous, neither of which I've been accused of.  Neither the very outdated 1969 or 1970 cases Mr. Rubin cited are anything close to being a blanket rejection of punitive damages under federal securities law, and I suggest Mr. Rubin comes to the present day legal environment encompassed by *Mastrobuono*

[v. Shearson Lehman Hutton, Inc., 514 U.S. 52 (1995)](#) in which the power reserved to award punitive damages in New York solely to judicial tribunals (such as this Honorable Court) per *Garrity* v. *Lyle Stuart, Inc.*, 40 N. Y. 2d 354, 353 N. E. 2d 793 (1976) was expanded to include arbitrators. This was a case involving the Mastrobuono's **securities trading account** with respondent Shearson Lehman Hutton, Inc. Doc 79 then states that my Doc 22 Complaint "fails to plead the other requisite elements of a federal securities fraud claim (i.e., scienter, reliance, loss causation)". I refer Mr. Rubin to again read Doc 41-1, the amicus brief I filed in the parallel Mai case stating that his case, like mine states 'in bold, "Computer programs don't change on their own – a human that had access to the defendant's software must have chosen to change it". Regarding reasonable reliance, it is self-evident that the stock description of a stock issued by defendant as one of the world's largest financial institutions should be accountable to be reasonably relied upon. Causation is also self-evident in that the cause of Mr. Mai's loss was from the grossly fraudulent actions of defendant in uwt not being linked to 3X the change in the oil index".' My loss was of course caused by the same gross fraud in the final sentence of the prior quote. All three of these (scienter, reliance, loss causation) are just as stunningly obvious in my case as in Mr. Mai's case, and likely why Mr. Rubin is just now for the first time arguing them just like his argument for the first time that "punitive damages are not available under either the Exchange Act or the Securities Act", his **13th** misrepresentation.  Any additional new arguments which Mr. Rubin makes in his reply to this opposition should of course be disregarded since he is only allowed to reply since I won't have an opportunity to respond to any new arguments/misrepresentations and as Mr. Rubin stated in Doc 29, one "cannot amend his pleading through the briefing of this [Opposition] Motion."[1]

---

[1] As this Court has observed, "[i]t is well established that 'a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" Bright-Asante v. Wagner, No. 15- cv-9110, 2017 WL 6948359, at *6 (S.D.N.Y. Dec. 1, 2017) (Carter, J.)

Respectfully submitted this 18th day of June, 2021

/s/ David M Kirk

David M Kirk, plaintiff

cc: Samuel J. Rubin (via ECF and e-mail)