**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Case 1:20-cv-07619-ALC**

**David M Kirk, plaintiff**

**v**

**Citigroup Global Markets Holdings Inc, defendant**

**VIA ECF & E-MAIL**

## Plaintiff's Relevant Doc 170 Supporting Link Information Submission

Below is the information from the Doc 170 links with the most relevant and not publicly available information, those being in ¶s 6 and 8:

¶6: "illegal redactions": Exhibit A
pg 1: Wife's name and employer JP Morgan redacted 2020 on (yr I filed)
pg 2: 3/23 sale of options – JP Morgan name redacted
pg 3: Name of stock/options sold 5/25 redacted

¶6: "removing all disclosure filings from 2020 on (the year I filed suit) as early as July 2022": Exhibit B

¶8: "never represented that the value of the ETNs would faithfully track three times the Index on a daily basis for the duration of an ETN holder's investment..": Exhibit C - Doc 156 page 2

¶8:"the first few pages repeat just that many times": Exhibit D

¶8:"SEC filings" – too large to duplicate – at SEC link:
https://www.sec.gov/Archives/edgar/data/831001/000095010316018624/0000950103-16-018624.txt

¶8: "Independent sources" - Exhibit E – Table of tracking error rates

¶8: "16,666 standard deviations" - Exhibit F – Calculation showing 16,666

¶8:"material ommission": Exhibit G: 2nd Circuit omits 5 words mid-sentence

Respectfuilly submitted this 1st day of August, 2026

/s/ David M Kirk
David M Kirk, plaintiff
873 Southern Creek Drive
Saint Johns, FL 32259
(904) 806-6937
mycommunityaddress@yahoo.com

## CERTIFICATE OF SERVICE

I certify that this was sent to Defense Counsel this 1st day of August, 2026 via ECF and email and USPS to:

Samuel J Rubin, Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
sRubin@goodwinlaw.com

/s/ David M Kirk
David M Kirk, plaintiff
873 Southern Creek Drive
Saint Johns, FL 32259
(904) 806-6937
mycommunityaddress@yahoo.com

# Exhibit A - illegal redactions

**FINANCIAL DISCLOSURE REPORT**
Page 2 of 10

| Name of Person Reporting | Date of Report |
| --- | --- |
| CARTER, ANDREW L. | [illegible] |

**III. NON-INVESTMENT INCOME.** *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

**A. Filer's Non-Investment Income**

[✓] NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
| --- | --- | --- | --- |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |

**B. Spouse's Non-Investment Income** - *If you were married during any portion of the reporting year, complete this section.* [illegible]

[ ] NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE |
| --- | --- | --- |
| 1. | [illegible] | [redacted] - SALARY |

**FINANCIAL DISCLOSURE REPORT**
Page 2 of 10

| Name of Person Reporting | Date of Report |
| --- | --- |
| CARTER, ANDREW L. | [illegible] |

**III. NON-INVESTMENT INCOME.** *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

**A. Filer's Non-Investment Income**

[✓] NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
| --- | --- | --- | --- |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |

**B. Spouse's Non-Investment Income** - *If you were married during any portion of the reporting year, complete this section.* [illegible]

[ ] NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE |
| --- | --- | --- |
| 1. | [illegible] | [redacted] - SALARY |

**FINANCIAL DISCLOSURE REPORT**
Page 2 of 10

| Name of Person Reporting | Date of Report |
| --- | --- |
| CARTER, ANDREW L. | [illegible] |

**III. NON-INVESTMENT INCOME.** *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

**A. Filer's Non-Investment Income**

[✓] NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
| --- | --- | --- | --- |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |

**B. Spouse's Non-Investment Income** - *If you were married during any portion of the reporting year, complete this section.* [illegible]

[ ] NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE |
| --- | --- | --- |
| 1. | [illegible] | [redacted] - SALARY |

pg 1

**FINANCIAL DISCLOSURE REPORT**
Page 8 of 10

| Name of Person Reporting | Date of Report |
| --- | --- |
| CARTER, ANDREW L. | 08/14/2024 |

**VII. INVESTMENTS and TRUSTS** -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

[ ] NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 69. NY 529 GROWTH(Same as 64) | D | Distribution | K | T | Sold (part) | 07/24/23 | J | C | |
| 70. NY 529 BOND MKT (Same as 65) | D | Distribution | K | T | Sold (part) | 08/21/23 | J | C | |
| 71. NY 529 GROWTH (Same as 64) | D | Distribution | K | T | Sold (part) | 09/12/23 | J | C | |
| 72. NY 529 BOND MKT (Same as 65) | D | Distribution | K | T | Sold (part) | 10/23/23 | J | C | |
| 73. NY 529 MOD AGE BASED | A | Dividend | K | T | Sold (part) | 12/21/23 | J | C | |
| 74. NY 529 GROWTH (Same as 64) | A | Dividend | K | T | | | | | |
| 75. NY 529 BOND MKT (Same as 65) | A | Dividend | K | T | | | | | |
| 76. REAL ESTATE | C | Rent | O | R | | | | | |
| 77. J.P. MORGAN COMMON STOCK | A | Dividend | J | T | | | | | |
| 78. J.P. MORGAN RESTRICTED STOCK | A | Dividend | J | T | | | | | |
| 79. J.P. MORGAN STOCK OPTIONS | | None | J | T | | | | | |
| 80. [redacted] Stock Options | D | Distribution | J | T | Sold | 03/22/23 | J | B | |

pg 2

AO-10T
Rev. 03/2023

**FINANCIAL DISCLOSURE**
**PERIODIC TRANSACTION REPORT**

*Report Required by the Ethics in Government Act of 1978 (5 U.S.C. §§ 13101-13111)*

| 1. First Name | *2. Middle Initial | *3. Last Name | 4. Suffix |
| --- | --- | --- | --- |
| ndrew | L. | Carter | Jr. |
| . Title | *6. District/Court/Unit | | *7. Circuit |
| istrict Judge | NEW YORK SOUTHERN | | 02 |
| Report Type | 9. Calendar Year | *10. Date Filed | 11. Check box if amending prior report and enter date of prior submission. |
| eriodic Transaction Report | 2025 | 07/30/2025 | [ ] |
| 2. Date of First Transaction on this Report | | *13. Date of Last Transaction on this Report | |
| 5/23/2025 | | 05/23/2025 | |

**RANSACTIONS** *Any purchase, sale, or exchange that exceeds $1,000 in stocks, bonds, commodities futures, and other urities (Includes those of spouse and dependent children)*

| A. Description of Assets | B. Transaction Type | C. Date of Transaction | D. Date Notified of Transaction | E. Amount of Transaction |
| --- | --- | --- | --- | --- |
| [redacted] Stock | Sold (Part) | 05/23/2025 | 05/23/2025 | $15,001 - $50,000 |
| | | | | |

**FINANCIAL DISCLOSURE REPORT**
Page 9 of 10

| Name of Person Reporting | Date of Report |
| --- | --- |
| CARTER, ANDREW L. | [illegible] |

**VIII. ADDITIONAL INFORMATION OR EXPLANATIONS.** [illegible]

[illegible] [redacted]

[illegible]

[illegible]

[redacted]

pg 3

Please Don't Scroll Past This Can you chip in? The Internet Archive, which runs this project, partners with institutions across the globe to preserve cultural heritage that would otherwise be lost forever. We need your support in continuing this vital work.

Exhibit B - all disclosure filings 2020 on (year I filed suit) removed as early as July 2022

July 26, 2022 ↑

Have a portrait of Andrew Lamar Carter Jr. you can share?

Send it in

# Andrew Lamar Carter Jr. (S.D. New York)

FJC ID: 3416

## Biographical Information

**Born:** 1969 in Albany, Georgia

**Race:** Black or African American

**Gender:** Male ♂

**ABA Ratings:** Qualified (2011)

## Political Affiliations

Affiliations have been gathered from ballots, appointments, and original research.

- Beginning May 19, 2011: Democratic (via appointer)

## Education History

- Attended Harvard University and received a Juris Doctor (J.D.) in 1994
- Attended The University of Texas at Austin and received a Bachelor's (e.g. B.A.) in 1991

## Judicial Positions

JUDGE at DISTRICT COURT, S.D. NEW YORK (December 8, 2011 – Present)

**Appointed By:** Barack Hussein Obama II

**Selected By:** Appointment (President) on May 19, 2011

**Judicial Committee Action Date:** Sept. 15, 2011

**Nomination Hearing Date:** July 27, 2011

**Confirmation Date:** Dec. 5, 2011

**Vote Info:** Senate voted by voice vote

## Non-Judicial Positions

Includes a variety of positions such as governor, president, clerk, practitioner, public defender, attorneys general, and professor.

U.S. MAGISTRATE JUDGE at U.S. DISTRICT COURT, EASTERN DISTRICT OF NEW YORK (2009 – 2011)

SUPERVISING ATTORNEY (2006 – 2009)

ATTORNEY, FEDERAL DEFENDERS OF NEW YORK (2005 – 2009)

STAFF ATTORNEY (2005 – 2006)

FEDERAL DEFENDERS DIVISION (2000 – 2005)

STAFF ATTORNEY at LEGAL AID SOCIETY, NEW YORK CITY (1996 – 2005)

CRIMINAL DEFENSE DIVISION (1996 – 2000)

PROGRAM ASSISTANT at FORD FOUNDATION, NEW YORK CITY (1994 – 1996)

## Financial Disclosures (10)

Annual financial disclosure records filed by Federal judges, magistrates and clerks of the court.

| | | | |
|---|---|---|---|
| 2010 | 2011 | 2012 | 2013 |
| 2014 | 2015 | 2016 | 2017 |
| 2018 | 2019 | | |

argues that the marked statistical improbability of such fluctuations occurring absent fraudulent conduct is evidence of the Defendant's unlawful conduct. *See, e.g.,* ECF No. 151 at ¶ 7; ECF No. 48.

Taken as true, Plaintiff's reference to four additional days of ETN valuation mistracking is insufficient to create a cognizable claim under the relevant statutes. As before, the Fourth Amended Complaint does not raise any instance in which the Defendant "represente[ed] that the value of the ETNs would faithfully track three times the Index on a daily basis for the duration of an ETN holder's investment." ECF No. 123 at 12 (citing *Thomas v. CGMHI.*, No. 21-cv-3673 (VEC) (DF), 2022 WL 1051158, at *14 (S.D.N.Y. Mar. 1, 2022), *report and recommendation adopted as modified*, No. 21-CV-3673 (VEC), 2022 WL 951112 (S.D.N.Y. Mar. 30, 2022). Additionally, the most recent Complaint does not unseat the decision of this Court and others in this District that "the Pricing Supplement warn[ed] investors of the particular and heightened risks associated with investing in the ETNs." *Id.* at 11; *see also id.* at 11-13 (collecting comparable decisions).

Exhibit D – first pages of prospectus highlighted many times showing 3x

**PRICING SUPPLEMENT NO. 2016—USNCH0277/A/10± AND 2016—USNCH0278/A/10± DATED MARCH 18, 2020 (TO PROSPECTUS SUPPLEMENT AND PROSPECTUS EACH DATED MAY 14, 2018) MEDIUM-TERM SENIOR NOTES, SERIES N**

VelocityShares

# Issued by Citigroup Global Markets Holdings Inc.

## All payments due on the securities fully and unconditionally guaranteed by Citigroup Inc.

$22,500,000,000±± VelocityShares™ 3x Long Crude Oil ETNs linked to the S&P GSCI® Crude Oil Index ER due December 15, 2031 (the "**3x Long Crude Oil ETNs**")

$8,750,000,000±± VelocityShares™ 3x Inverse Crude Oil ETNs linked to the S&P GSCI® Crude Oil Index ER due December 15,

The exchange ticker, denominations and stated principal amount per ETN for each series of ETNs is set forth below. ETNs may be sold by us to CGMI, and by CGMI to investors or dealers, at a price that is higher or lower than the stated principal amount, based on the most recent Indicative Value of the ETNs. For information regarding potential splits or reverse splits of the ETNs, see "Specific Terms of the ETNs—Split or Reverse Split of the ETNs" herein.

| **ETNs** | **Exchange Ticker** | **Denomination and Stated Principal Amount per ETN** |
|---|---|---|
| 3x Long Crude Oil ETNs | UWT | $25.00 |
| 3x Inverse Crude Oil ETNs | DWT | $25.00 |

Closing Indicative Value: Any payment on the ETNs, whether upon early redemption at your option, acceleration at our option or at maturity (but excluding payment upon automatic acceleration), will be based on the Closing Indicative Value of the applicable series of ETNs on one or more Valuation Dates, as described herein. The Closing Indicative Value for each series of ETNs on the Inception Date was $25.00. The Closing Indicative Value on March 12, 2020 per $25.00 stated principal amount of the 3x Long Crude Oil ETN was $1.0421. The Closing Indicative Value on February 27, 2020 per $25.00 stated principal amount of the 3x Inverse Crude Oil ETN was $14.7821. The Closing



Index Performance for such series of ETNs will be modified so that the applicable leveraged exposure does not reset after such Valuation Period begins. See "Specific Terms of the ETNs—Closing Indicative Value" for more information. The Daily Index Performance for any series of ETNs is deemed to equal zero on any day that is not an Index Business Day.

Leverage Amount: The Leverage Amount for each series of ETNs is as follows:

| | |
|---|---|
| 3x Long Crude Oil ETNs: | 3 |
| 3x Inverse Crude Oil ETNs: | -3 |

Daily Investor Fee: The Daily Investor Fee for any series of ETNs on any Index Business Day will equal the product of (1) the Closing Indicative Value for such series of ETNs on the immediately preceding Index Business Day *times* (2)(a) the Investor Fee Factor for such series of ETNs *times* (b) 1/365 *times* (c) *d*, where *d* is the number of calendar days from and including the immediately prior Index Business Day to but excluding the date of determination. The Daily Investor Fee for any series of ETNs is deemed to equal zero on any day that is not an Index Business Day.

Intraday Indicative Value: The "Intraday Indicative Value" for each series of ETNs is designed to approximate the economic value of such series of ETNs at a given time. It is calculated using the same formula as the Closing Indicative Value, except that instead of using the closing level of the Index, the calculation is based on the most recent intraday level of the Index at the particular time. The Intraday Indicative Value for each series of the ETNs will be calculated every 15 seconds on each Index Business Day during NYSE Arca trading hours (currently 9:30 a.m. to 4:00 p.m., New York City time) (or during NYMEX Trading Hours during an Automatic Acceleration Valuation Period on any scheduled Index Business Day) and will be disseminated over the Consolidated Tape, or other major market data vendor. At any time at which a Market Disruption Event with respect to a series of ETNs has occurred and is continuing, there shall be no Intraday Indicative Value for such series of ETNs, except for purposes of determining whether a Trigger Event has occurred and determining the Automatic Acceleration Redemption Amount during an Automatic Acceleration Valuation Period. JHI or its affiliate is responsible for computing and disseminating the Intraday Indicative Value, except that CGMI has sole discretion to determine the Intraday Indicative Value in connection with an Automatic Acceleration and during an Automatic Acceleration Valuation Period.

The Intraday Indicative Value is a calculated value and is not the same as the trading price of the ETNs and is not a price at which you can buy or sell the ETNs in the secondary market. The Intraday Indicative Value does not take into account the factors that may influence the trading price of the ETNs, such as imbalances of supply and demand, lack of liquidity and credit considerations. **The actual trading price of the ETNs in the secondary market may vary significantly from their Intraday Indicative Value.**

# Exhibit E – Table of tracking error rates

**Table 7**

**Tracking error and return analyses of levered and inverse ETPs benchmarked to non-carry futures indexes.** The notation is as follows: *L* is the leverage ratio, *β* is the estimated slope coefficient of the ETP return regression on the benchmark return, and *HPR* is the holding period return over the sample period.

| Category | Ticker | Issuer | ETP | *L* | *ER* | Tracking error summary | | | Return summary | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Tracking difference | Standard deviation | RATD ratio | $\beta$ | $H_0$: $\beta$=*L* t-ratio | Adj. $R^2$ | *HPR* |
| Crude oil | Sample period: | | | | | 20170328 | 20200313 | No. of obs.: | 745 | | | -36.15% |
| Crude oil | DWT | Citigroup | ETN | -3 | 1.50% | -0.026% | 1.674% | -0.431 | -2.859 | 5.19 | 0.937 | -60.37% |
| Crude oil | OILD | ProShares | ETF | -3 | 0.49% | -0.040% | 1.676% | -0.649 | -2.830 | 6.28 | 0.936 | -63.26% |
| Crude oil | SCO | ProShares | ETF | -2 | 0.95% | -0.022% | 1.110% | -0.549 | -1.878 | 6.80 | 0.937 | -26.21% |
| Crude oil | USO | USCF | ETF | 1 | 0.73% | 0.010% | 0.557% | 0.485 | 0.944 | -6.24 | 0.936 | -30.68% |
| Crude oil | UCO | ProShares | ETF | 2 | 0.95% | 0.009% | 1.110% | 0.230 | 1.849 | -8.60 | 0.937 | -69.29% |
| Crude oil | UWT | Citigroup | ETN | 3 | 1.50% | -0.012% | 1.767% | -0.181 | 2.732 | -9.70 | 0.929 | -92.81% |
| Crude oil | OILU | ProShares | ETF | 3 | 0.49% | -0.006% | 1.759% | -0.091 | 2.719 | -10.29 | 0.930 | -92.20% |

# Exhibit F – Calculation showing 16,666 standard deviations

A value of 50% is exactly **16,666.67 standard deviations** away from a starting point (assuming a distance from a mean or baseline of 0%).

## 🧮 The Calculation

To find how many standard deviations a value is (also known as a z-score), divide the target value by the size of one standard deviation: Firgelli Automations +2

$$\text{Number of Standard Deviations} = \frac{\text{Target Value}}{\text{Standard Deviation}}$$

$$\text{Number of Standard Deviations} = \frac{50\%}{0.003\%} = 16,666.\overline{6}$$

# Exhibit G – 2nd Circuit "material ommission"

NY 2nd Circuit Appellate Court justified dismissal of my case on:

1) "Material omission": omitting 5 words mid-sentence which clarified that the stock naturally would fluctuate more in trading hours, but close at 1X change in the oil index as did within 0.003% / day for all B05 trading days since inception.

2) 2x separate electric Citing warnings of risks of oil price swings just like Judge Carter did,neither citing a SINGLE EXAMPLE from any of us 12 plaintiffs! Our cases were oil stock vs targeted NAV price only, not once blaming oil price, highlighted in pink 2 page strips down

3) All cities are after "in the event of Automated Acceleration" which wasn't even announced until Fri March 1 9, after SD NAV even, so all Citings are irrelevant. Why didn't any 10 sleep plaintiffs notice it until 1st@ few days end of July 2022? We weren't raised to believe such high judges could be so brazen. All three wrong on all three counts. See highlighted in blue 3 page strips down

Excerpt from 2nd Circuit Court of Appeals #24-237, Dckt 33.1, Page 5

markets. *See* Suppl. App'x at 17 ("T]he] Indicative Value of the ETNs are not the same as the trading price of the ETNs, which is . . . a market-determined price that

Below is what the Prospectus actually said with the omitted words in red

the pricing supplement, because we believe these values provide important information to investors seeking to buy or sell the ETNs in the secondary market. However, the Intraday Indicative Value and the Indicative Value of the ETNs are not the same as the trading price of the ETNs, which is the price at which you may be able to sell your ETNs in the secondary market. The trading price of the ETNs is a market-determined price that will reflect market supply and demand and *many other factors* that impact Indicative Value.

5 of 10, Page 5 of 10 Case: 24-237, 03/10/2025, DcktEntry: 33.1, Page 5 of 8

the crude-oil index, could differ from the ETNs' trading price in secondary markets. *See* Suppl. App'x at 17 ("T]he] Indicative Value of the ETNs are not the same as the trading price of the ETNs, which is . . . a market-determined price that will reflect market supply and demand."). The Pricing Supplement further described how trading prices could be affected by "many unpredictable factors" that alter "global supply and demand for crude oil." *Id.* at 41. Accordingly, because the Pricing Supplement clearly warned investors about the risks associated with the ETNs, and because Kirk has not alleged any other facts that would render the statements made regarding the ETNs false, Kirk has failed to state a claim under section 12(a)(2). *See Ashland Inc. v. Morgan Stanley & Co.*, 652

1/22/2021 Case 1:20-cv-07948-AMD Document 313-9 Filed 01/22/21 Page 17 of 81 »»»

**UNDERSTANDING THE VALUE OF THE ETNS**

Any payment on the ETNs, whether it is the Early Redemption Amount payable upon early redemption at your option, the Optional Acceleration Redemption Amount payable upon acceleration at your option or the Maturity Redemption Amount payable at maturity (but excluding the Automatic Acceleration Redemption Amount payable upon Automatic Acceleration), will be based on the Closing Indicative Value of the applicable ETNs on one or more Valuation Dates. The Intraday Indicative Value of the ETNs at any time during an Index Business Day provides an indication of what the Closing Indicative Value of the ETNs would be if the then-current intraday level of the Index were to be the closing level of the Index on that Index Business Day. Because both the Intraday Indicative Value and the Closing Indicative Value *is also used to determine the* Automatic Acceleration Redemption Amount, We have arranged for the Intraday Indicative Value and Closing Indicative Value (each, an "Indicative Value") for each series of ETNs to be published on each Index Business Day under the applicable Indicative Value ticker for each series of ETNs, as set forth on the cover of this pricing supplement, because we believe these values provide important information to investors seeking to buy or sell the ETNs in the secondary market. However, *the Intraday Indicative Value and the Closing Indicative Value of the ETNs are not the same as the trading price of the ETNs,* which is the price at which you may be able to sell your ETNs in the secondary market.

End of Exhibit E